## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                )
LIONBRIDGE TECHNOLOGIES, LLC,    )
                                )
               Plaintiff,        )
                                )            Civil Action
v.                               )            No. 20-10014-PBS
                                )
VALLEY FORGE INSURANCE COMPANY,  )
                                )
               Defendant.        )
_____ )
                                )
VALLEY FORGE INSURANCE COMPANY,  )
                                )
         Third-Party Plaintiff,  )
                                )
v.                               )
                                )
H.I.G. MIDDLE MARKET, LLC;       )
ENDURANCE ASSURANCE CORPORATION; )
and NATIONAL UNION FIRE INSURANCE)
COMPANY OF PITTSBURGH, PA,       )
                                )
         Third-Party Defendants. )
_____ )
```

### MEMORANDUM AND ORDER

August 5, 2021

Saris, D.J.

### INTRODUCTION

This case arises from an insurance coverage dispute.
Plaintiff Lionbridge Technologies, LLC[1] ("Lionbridge") seeks
coverage by its insurer Defendant Valley Forge Insurance Company

---

[1] During the pendency of this action, Lionbridge Technologies, Inc.
converted to a limited liability company. The case caption has
been revised to reflect the party's current name. **[Dkt. 165 at 1]**

1

("VFIC") of its full defense costs in an underlying litigation. VFIC challenges whether it has a duty to defend, whether Lionbridge's defense costs are reasonable, and whether it is required to provide a defense to Lionbridge's codefendant, H.I.G. Middle Market LLC ("HIG"). VFIC filed a third-party complaint against HIG, its insurer Endurance Assurance Corporation ("Endurance"), and Lionbridge's additional insurer, National Union Fire Insurance Company of Pittsburg, PA ("National Union").

Two dispositive motions are now before the Court. Lionbridge moves for partial summary judgment against VFIC (Dkt. 76), and VFIC cross-moves for summary judgment against Lionbridge (Dkt. 104). After hearing, the Court **ALLOWS** VFIC's motion for summary judgment (Dkt. 104) and **DENIES** Lionbridge's motion for partial summary judgment (Dkt. 76).

## BACKGROUND

The following facts are undisputed unless otherwise noted.

### I.   Insurance Policy

Lionbridge seeks coverage from VFIC under the "Personal and Advertising Injury Liability" section of the "General Liability" insurance included in the policy. Dkt. 103-2 at 131. Under that section of the policy, VFIC will "pay those sums that the Insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies." Id. at

2

137. VFIC "[w]ill have the right and duty to defend the Insured against any suit seeking those damages." Id.

The policy defines "[p]ersonal and advertising injury" as "arising out of one or more" listed "offenses." Id. at 148. Lionbridge argues that two listed offenses apply here: "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" and "[t]he use of another's advertising idea in your advertisement." Id. The policy defines "[a]dvertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Id. at 145. It specifies that "only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement." Id.

The policy excludes coverage for certain personal and advertising injuries. These exclusions include "[p]ersonal and advertising injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury," "arising out of oral or written publication, in any manner, of material, if done by or at the direction of the Insured with knowledge of its falsity," "arising out of the infringement of . . . trade secret

3

or other intellectual property rights," and "arising out of any access to or disclosure of any person or organization's confidential or personal information, including . . . trade secrets, processing methods, customer lists, financial information, . . . or any other type of nonpublic information." Id. at 137–38, 178.

## II.  **Underlying Litigation**

The underlying litigation on which this coverage dispute centers arose from the forced sale of TransPerfect Global, Inc. ("TPG"). In its complaint, TPG alleges that it is "one of the world's leading providers of translation, website localization and litigation support services." Dkt. 107 ¶ 39 (quoting Dkt. 76-7 ¶ 23). In April 2014, one of TPG's two co-founders filed a petition in the Delaware Chancery Court seeking dissolution and forced sale of TPG. In August 2015, the court directed that TPG be sold at auction.

TPG alleges that HIG, a private equity firm, "devised a strategy to acquire Lionbridge and TPG to create the world's largest language translation service provider." Id. ¶ 47(f) (quoting Dkt. 76-7 ¶ 13). After acquiring Lionbridge in February 2017, TPG alleges, HIG "took control of Lionbridge" and "began to prepare for a combination with TPG." Id. ¶ 40 (quoting Dkt. 76-7 ¶ 59). HIG then entered the official bidding process to purchase TPG.

4

After realizing that one of TPG's cofounders would succeed in the auction, HIG allegedly decided to continue in the bidding process as a pretext to gain access to TPG's confidential business information. HIG allegedly knew that bidders received increasing access to such information from one round to the next based on the seriousness of their bids. Through that process, HIG and Lionbridge allegedly gained access to TPG computer databases containing trade secrets including "critical information about TPG's sales models, marketing strategies, unique cost and pricing structures, compensation models, commission schedules, and customer and vendor relationships and contracts." Id. ¶ 42 (citing Dkt. 76-7 ¶¶ 24, 30, 89-91). HIG and Lionbridge then repeatedly accessed that information in violation of a confidentiality agreement between HIG and TPG, conducted interviews with TPG management, and prolonged their access by persuading the bank managing the bidding process to alter the rules and by making "shill bids" that deceptively appeared to satisfy the conditions for advancement to later rounds.

Further, TPG alleges that "[d]uring the auction, Lionbridge sales people falsely told TPG's customers that Lionbridge was purchasing TPG" and that they should "contract with Lionbridge directly before the sale." Id. ¶ 43 (quoting Dkt. 76-7 ¶ 127). They also allegedly "misrepresented the nature of the underlying litigation [in the Delaware Chancery Court]" and "introduced doubt

regarding the stability of TPG . . . in bad faith for the purpose of damaging TPG and advantaging Lionbridge." Id. (quoting Dkt. 76-7 ¶ 127).

HIG officially exited the bidding process in November 2017. After that time, TPG alleges that HIG submitted an obviously late bid, baselessly objected to the winning bid, and attempted to assist one of TPG's cofounders in objecting to the winning bid—made by the other cofounder. In violation of the confidentiality agreement, HIG and Lionbridge also allegedly refused to return or destroy TPG's confidential information and used TPG's trade secrets to generate increased revenue for Lionbridge.

TPG sued Lionbridge and HIG in the Southern District of New York, alleging that both "participated in the auction process" to acquire TPG and caused injury when they "acquired [TPG's] trade secrets and confidential information under false pretenses, and then used the trade secrets to unfairly compete with TPG." Dkt. 97 at 4. Specifically, TPG brings claims for Misappropriation of Trade Secrets under the Defend Trade Secrets Act (acquisition of trade secrets by improper means, unauthorized disclosure of trade secrets, and injunctive relief), 18 U.S.C. § 1836 et seq. (Counts I-III); Violation of the Computer Fraud and Abuse Act (exceeding authorized access and injunctive relief), 18 U.S.C. § 1030(g)

(Counts IV and V);[2] Misappropriation of Trade Secrets under State Law (Count VI); Unfair Competition and Trade Secrets under State Law (Count VII); Unjust Enrichment (against Lionbridge only) (Count VIII); Breach of Contract (against HIG only) (Count IX); and Fraud (Count X). TPG seeks over $300 million in damages. Lionbridge agreed to indemnify HIG for all attorneys' fees and costs incurred in defending the underlying litigation.

### III.  **Present Coverage Dispute**

In a July 17, 2019 letter to Lionbridge, VFIC agreed to defend Lionbridge in the underlying litigation subject to a reservation of rights. Dkt. 76-4 at 2 ("Because certain allegations in the Complaint could potentially seek damages for a personal and advertising injury as defined by the VFIC primary policy . . ., VFIC will agree to defend TPG, pursuant to a reservation of rights."). Lionbridge retained law firms Kirkland & Ellis ("Kirkland") and Akerman, LLP ("Akerman") to defend both it and HIG. VFIC objected to the defense costs on three grounds: that it had no obligation to provide a defense to HIG, that it had no obligation to pay for two law firms, and that Kirkland's rates

---

[2] The Southern District of New York has dismissed TPG's claims under the Computer Fraud and Abuse Act. Opinion and Order, <u>Transperfect Global, Inc. v. Lionbridge Technologies, Inc.,</u> Case No. 1:19-cv-03283-DLC (S.D.N.Y. March 20, 2020).

were unreasonably high. Based on those objections, VFIC refused to pay for Akerman and paid only a portion of Kirkland's bills.[3]

Lionbridge brought this suit seeking full coverage by VFIC of its defense costs in the underlying litigation, including those costs that benefitted HIG. In its answer, VFIC denied that it has a duty to defend Lionbridge. VFIC also filed a third-party complaint seeking to recoup from HIG defense costs it has paid or may pay in the underlying litigation that benefitted HIG. Lionbridge and VFIC now cross-move for summary judgment. Arguing that it does not have a duty to defend Lionbridge, VFIC seeks dismissal of all claims.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t summary judgment a court must view the record in the light

---

[3] VFIC initially adjusted Kirkland's billed hourly rates of $1,410 or $1,055 per hour for partners and $695 to $855 per hour for associates to $400 per hour for partners, $300 per hour for associates, and $115 per hour for paralegals., VFIC revised its adjustments to $600 per hour for partners, $400 per hour for associates, and $200 per hour for paralegals. At the adjusted rates, VFIC paid for 100 percent of Kirkland's billed hours "[f]or line-items that appeared to be for services provided for Lionbridge's exclusive benefit," 0 percent [f]or line-items that appeared to be for services provided for HIG's exclusive benefit," and 50 percent for "joint tasks." Dkt. 76-8 at 2-3.

most favorable to the nonmoving party and draw all reasonable inferences in favor of the same." Chadwick v. WellPoint, Inc., 561 F.3d 38, 41 (1st Cir. 2009). "A genuine [dispute] exists when, based on the evidence, a reasonable jury could resolve the issue in favor of the non-moving party." Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006).

## DISCUSSION

In its motion for summary judgment, VFIC argues that it does not have a duty to defend Lionbridge in the underlying litigation. Lionbridge responds that (1) the underlying litigation triggered VFIC's duty to defend, (2) VFIC is bound by its earlier admissions that it has a duty to defend based on the doctrine of judicial admissions, (3) VFIC is equitably estopped from disputing its duty to defend, and (4) the policy's exceptions do not preclude all potentially covered claims. Because all of Lionbridge's claims are premised on VFIC's obligation to provide a defense, the Court begins by analyzing the duty to defend.

## I.   Duty to Defend the Underlying Litigation

"An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Billings v. Com. Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010). "[G]eneral allegations" that show "a possibility that the liability claim falls within the insurance coverage" are

sufficient. Id. at 414 (cleaned up). The allegations in the complaint need not "specifically and unequivocally make out a claim within the coverage." Id. "The insured has the initial burden of proving that a loss falls within the policy's description of covered risks. It is the insurer's burden to show the applicability of a particular exclusion." New Fed Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 543 F.3d 7, 11 (1st Cir. 2008) (cleaned up) (applying Massachusetts law). Massachusetts applies the "in for one, in for all" rule, which "expands the insurer's obligation to defend all claims brought against the insured so long as at least one claim asserted against the insured is covered by the policy." Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 91 F. Supp. 3d 66, 71 (D. Mass. 2015) (cleaned up), aff'd, 875 F.3d 716 (1st Cir. 2017).

Lionbridge alleges that the underlying litigation triggered VFIC's duty to defend under both the "slanders or libels . . . or disparages . . . goods, products of services" clause and the "use of another's advertising idea" clause of the policy. Dkt. 133 ¶ 36. The Court analyzes those arguments in turn.

## A. Slander, Libel, or Disparagement

To prove a duty to defend under the policy's coverage of injury from slander, libel, or disparagement of goods, products or services, Lionbridge must show that the underlying complaint contains "allegations . . . reasonably susceptible of an

interpretation that states or roughly sketches" one of those claims. See Billings, 936 N.E.2d at 414. Slander requires that "the defendant made a statement, of and concerning the plaintiff, to a third party; . . . the statement could damage the plaintiff's reputation in the community; . . . the defendant was at fault for making the statement; and . . . the statement caused economic loss or . . . is actionable without economic loss." Scholz v. Delp, 41 N.E.3d 38, 45 (Mass. 2015) (cleaned up).[4] As relevant here, slander without economic loss requires a "false imputation of conduct or characteristics incompatible with the proper conduct of the other's lawful business, trade, profession or office." Restatement (Second) of Torts § 573 (Am. L. Inst. 1977); see Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 511 (Mass. 2003). Libel requires that the defamatory statement be published in writing. Ravnikar, 782 N.E.2d at 510. Disparagement of goods, products or services requires that the defendant have made a statement of fact specifically related to the plaintiff's goods, products or services. HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 763 (Mass. 2013). Neither general statements about a business nor statements of

---

[4] The parties do not dispute that Massachusetts law applies. Moreover, choice of law does not affect the outcome of this dispute. See, e.g., Protic v. Dengler, 46 F. Supp. 2d 277, 280 (S.D.N.Y.) (applying the same standard under New York law), aff'd, 205 F.3d 1324 (2d Cir. 1999).

opinion are sufficient. See id.; Scholz, 41 N.E.3d 38, 45 (Mass. 2015).

Lionbridge cites to one paragraph of the underlying complaint as containing allegations that "roughly sketch" a claim for slander, libel, or disparagement of goods, products or services. It states:

> During the auction, . . . Lionbridge sales people falsely told TPG's customers that Lionbridge was purchasing TPG and that they should contract with Lionbridge directly before the sale. They also contacted TPG's existing and prospective clients, and both misrepresented the nature of the underlying litigation [in the Delaware Chancery Court] and introduced doubt regarding the stability of TPG in bad faith for the purpose of damaging TPG and advantaging Lionbridge.

Dkt. 76-7 ¶ 127. In Lionbridge's view, these allegations are sufficient to show "a possibility that the liability claim falls within the insurance coverage" for slander, libel, or disparagement of goods, products or services. See Billings, 936 N.E.2d at 414.

VFIC responds that, among other infirmities in Lionbridge's argument, "TPG nowhere claims that any actual harm resulted from the statements themselves" nor that "the statements damaged its reputation." Dkt. 146 at 4. Instead, TPG's complaint alleges that it was injured "when [Lionbridge and HIG] acquired [TPG's] trade secrets and confidential information under false pretenses, and then used the trade secrets to unfairly compete with TPG." Dkt. 76-7 ¶ 1. Because the underlying complaint makes no mention of

harm to TPG due to the alleged statements by Lionbridge sales people, VFIC argues that it does not even "roughly sketch" a claim for slander, libel, or disparagement – each of which have resulting harm as an element.

The Court agrees with VFIC. The allegations in the underlying complaint cited by Lionbridge are not "reasonably susceptible of an interpretation" that "roughly sketches a claim" for slander, libel or disparagement of goods, products or services. See Billings, 936 N.E.2d at 415. Libel and disparagement of goods, products or services are plainly inapplicable – Lionbridge does not identify any allegations of written statements or of statements regarding TPG's goods, products or services. See Ravnikar, 782 N.E.2d at 510; HipSaver, Inc., 984 N.E.2d at 763. As for slander, Lionbridge has not met its initial burden because it does not point to any allegation of harm to TPG resulting from the alleged false or misleading statements, nor to any alleged statements about TPG's conduct that would be "incompatible with the proper conduct" of its business. Restatement (Second) of Torts § 573; see Scholz, 41 N.E.3d at 45; Ravnikar, 782 N.E.2d at 511.

Moreover, as VFIC explains, each of the cases Lionbridge relies on is distinguishable. In Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 545 N.E.2d 1156 (Mass. 1989), the Massachusetts Supreme Judicial Court found that an artist's suit against the orchestra alleging reputational harm caused by

13

its cancellation of her performance roughly sketched a claim under a clause in the orchestra's insurance policy covering "other defamatory or disparaging material." Id. at 1159 (emphasis removed). The court reasoned that the clause should not be limited to disparagement of products or property because "[i]f an insurer desires to cover, and therefore to defend against, only those actions seeking damages for" such limited types of disparagement, "then the insurer can issue a policy which says as much." Id. Here, VFIC explicitly limited the policy to coverage of injury from "disparagement of goods, products, or services." Dkt. 146 at 7.

In Billings, the court held that an insurer had a duty to defend where the policy covered injuries arising from slander, libel, or other "defamation of character," and the underlying complaint contained allegations that the insured spread rumors that plaintiff developers planned to unlawfully bypass permitting requirements, "fill the wetlands," and "build sixteen houses on the marsh" – rumors that caused one of the developers "such emotional distress that he was hospitalized." 936 N.E.2d at 411 (cleaned up). Lionbridge equates these "rumors" with the alleged statements by its sales people, but there is a key difference. The rumors in Billings essentially called the developers "environmental criminals," per se defamation that requires no showing of damages. See id. at 415.

Finally, in <u>Norfolk & Dedham Mutual Fire Insurance Co. v. Cleary Consultants, Inc.</u>, 958 N.E.2d 853 (Mass. App. Ct. 2011), the court held that an insurer had a duty to defend where the policy covered personal and advertising injury arising from statements that "violate[] a person's right of privacy" and the underlying complaint filed by the insured's employee alleged sexual harassment by her supervisor in which the supervisor "made offensive sexual comments about her appearance and her relationships," "questioned her about her sex life during her marriage and after her divorce," and "ridiculed her choice of boyfriend by using an offensive, derogatory term to question the boyfriend's sexuality and [the employee's] attraction to him." <u>Id.</u> at 859, 861. <u>Norfolk</u> simply is not on point. <u>See</u> <u>id.</u> Lionbridge's argument for coverage under the slander, libel, and disparagement of goods, services or products clause finds no support in the cited Massachusetts cases and fails as a matter of law.

### B. Use of Another's Advertising Idea

The insurance policy's coverage of injury arising from use of another's advertising idea is limited to claims specifically involving the taking of a competitor's ideas about advertising to the public at large and using those ideas in the policyholder's own advertisement. <u>See</u> <u>Holyoke Mut. Ins. Co. v. Vibram USA, Inc.</u>, 106 N.E.3d 572, 577–78 (Mass. 2018).

Lionbridge argues that the underlying complaint's allegations that Lionbridge changed its website to emphasize the industry that made up the largest share of TPG's business "roughly sketches" a claim for injury arising for use of another's advertising idea. Lionbridge notes that a website can constitute an advertisement.

VFIC responds that the allegations in the underlying complaint sketch a claim for use of TPG's business model and trade secrets, not its advertising ideas. VFIC relies on Holyoke Mutual Insurance Co., 106 N.E.3d at 579, for the proposition that the concept of an "advertising idea" should not be treated as "all-encompassing." Id. (citing several cases in which courts found underlying complaints addressed a product or business idea rather than an advertising idea even where the idea appeared in the insured's advertisement). The court looked to whether the insured used the name of a famous barefoot marathon runner as an advertising idea, whether the runner's family had previously used the name as an advertising idea, and whether the family's suit sought to enforce its right to use the name as an advertising idea. Id. at 579–80. VFIC notes that the underlying complaint here alleges that Lionbridge "changed its business model," and "focus[ed] on certain products [and] . . . specific industries," because Lionbridge "learned [these] were the largest revenue generators for TPG." Dkt. 76-7 ¶ 131. In VFIC's view, these allegations involve "ideas about the business itself, rather than

16

about advertising" regardless of the fact that the "alleged change
in Lionbridge's 'business model' was reflected on its website."
Dkt. 146 at 11 (emphasis in the original).

Allegations that the change in Lionbridge's business model
appeared on its website do not constitute allegations of an
advertising injury. See Holyoke Mut. Ins. Co., 106 N.E.3d at 579.
Lionbridge cites to no language in the underlying complaint that
can be reasonably interpreted as seeking to enforce TPG's right to
use its specialties in certain industries as an advertising idea.
Instead, the underlying complaint indicates that TPG seeks to
recover for misappropriation of its trade secrets – including its
business model based on which industries are its largest sources
of clients. Dkt. 76-7 ¶¶ 130-31 ("After accessing TPG's Proprietary
Information and Trade Secrets regarding TPG's proprietary sales
approach, Lionbridge changed its business model to replicate TPG's
by focusing on certain products with market outreach to specific
industries. . . . [T]he website has been refocused on particular
industries it learned were the largest revenue generators for
TPG."). Those allegations do not "roughly sketch" a claim under
the policy's "use of another's advertising idea" clause. See
Billings, 936 N.E.2d at 414.

## II.  **Applicability of Policy Exceptions**

Even if Lionbridge had met its initial burden to show that
the underlying complaint contains factual allegations that roughly

sketch a covered claim, which the Court holds it has not, VFIC has shown that all potential claims fall within one of the policy's coverage exceptions. See New Fed Mortg. Corp., 543 F.3d at 11.

### A. Knowledge

Lionbridge argues that the knowledge exclusions do not preclude VFIC's duty to defend because "both of the underlying claims triggering coverage" — slander, libel or disparagement of services, goods or products of TPG and use of TPG's advertising idea — "can be established with mere negligence so Valley Forge cannot foreclose the possibility of a covered claim based on negligence." Dkt. 134 at 3.

VFIC responds that the underlying complaint alleges statements made "with knowledge that [they] would violate the rights of [TPG] and would inflict . . . injury" or "with knowledge of [the statements'] falsity" because "TPG characterizes the statements as 'false,' as 'misrepresentations,' as part of Lionbridge's scheme to '[take] advantage if the extended sales process to undercut TPG,' and as made 'in bad faith for the purpose of damaging TPG and advantaging Lionbridge.'" Dkt. 146 at 12-13.

Lionbridge urges the Court to look to the lowest threshold mens rea for potential claims rather than to the factual allegations actually made in the underlying complaint. Here, the underlying complaint plainly alleges statements made with knowledge of their falsity – "in bad faith" – and with knowledge

18

that they violated TPG's rights and would inflict injury – "for the purpose of damaging TPG." See id. Both knowledge exceptions thus preclude coverage.

### B. Infringement of or Access to Trade Secrets

The insurance policy excludes coverage from injuries "arising out of the infringement" of another organization's "trade secret," as well as claims "arising out of any access to or disclosure of" another organization's "confidential...information," including "trade secrets, processing methods, customer lists, financial information, . . . or any other type of nonpublic information." Dkt. 53-1 at 139, 179.

Lionbridge argues that "this exclusion does not eliminate the potential coverage for the covered claims for libel, slander, disparagement, or misappropriation of an advertising idea because all of these claims can be established without an 'infringement' of trade secrets. Further, the exclusion explicitly states that it does not apply to the alleged misappropriation of an advertising idea." Dkt. 134 at 3–4.

VFIC responds that the underling complaint "extensively describes Lionbridge's (and H.I.G.'s) alleged unlawful access to and misappropriation of TPG's trade secrets and confidential business information . . . [and] plainly claims that all of TPG's damages arose from this conduct." Dkt. 146 at 12.

19

As discussed above, VFIC persuasively argues that the underlying complaint contains no factual allegations of harm caused by libel, slander, disparagement, or misappropriation of an advertising idea. Lionbridge has not shown that the underlying complaint alleges any injury that does not arise out of the infringement of TPG's trade secrets or access to TPG's trade secrets. Accordingly, the trade secrets exceptions preclude coverage.

## III.   **Judicial Estoppel**

Regardless of whether VFIC had a duty to defend, Lionbridge argues that VFIC is judicially estopped from challenging its duty to defend because it "has repeatedly admitted in its pleadings that it has a duty to defend. . . . To the extent Valley Forge harbored a dispute regarding that admission, it was obligated to say so and, since it did not, it is bound by its admissions 'throughout the course of the proceeding.'" Dkt. 134 at 14-15 (quoting Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992)).

VFIC responds that "the existence of a duty to defend is [a question] of law, involving comparison of the complaint with the relevant terms of the governing policy," so it "is not one to which the doctrine of judicial admission can apply." Dkt. 146 at 19 (cleaned up). Moreover, VFIC argues that there is no inconsistency

in its statements because it previously agreed to defend Lionbridge subject to a reservation of rights.

The doctrine of judicial estoppel applies where a party seeks to prove a matter of concrete fact that is inconsistent with the party's earlier assertions in the proceeding as to that fact. Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010). "The contours of the doctrine are hazy," but "[i]t is . . . widely agreed that, at a minimum, . . . the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive" and "the responsible party must have succeeded in persuading a court to accept its prior position." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004). Lionbridge cannot satisfy the latter prong for the simple reason that the Court has taken no action in acceptance of VFIC's previous statements. See id.; Gens v. Resol. Tr. Corp., 112 F.3d 569, 572 (1st Cir. 1997) ("Judicial estoppel is not implicated unless the first forum accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum.") (emphasis removed).

## IV.  **Equitable Estoppel**

Regardless of whether VFIC's duty to defend was triggered by the complaint in the underlying litigation, Lionbridge argues that VFIC must cover Lionbridge's defense costs under an equitable estoppel theory. Lionbridge alleges that VFIC repeatedly

21

represented that it had a duty to defend and that Lionbridge
detrimentally relied on those representations by transferring work
from Akerman to Kirkland, which has higher hourly rates.

VFIC responds that it informed Lionbridge from the start that
it agreed to provide a defense subject to a reservation of rights.
Dkt. 146 at 14 (stating that it "sent Lionbridge a ten-page letter
explaining the results of its initial review of TPG's complaint
. . . [,] explained that there were a number of reasons . . . for
believing that some or all of TPG's claims fell outside the
policy's coverage . . . [, and] offered to defend Lionbridge, but
subject to a reservation of rights"). VFIC specifically reserved
the right to "withdraw from Lionbridge's defense" and to "file a
declaratory judgment action for the purpose of determining its
continuing rights and obligations under the policy." Id. Further,
VFIC notes that it "offered to allow Lionbridge to select its own
defense counsel for the TPG suit, which Lionbridge did . . . [,
and] Lionbridge has continued to exercise sole control over the
activities of its defense counsel, and the direction of and
strategies for Lionbridge's defense." Id.

Lionbridge's argument is easily dispatched. "As a general
rule, estoppel claims are easily overcome in the context of an
insurer's duty to defend. A reservation-of-rights letter suffices
under Massachusetts law to block any estoppel claim." Narragansett
Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 372-73 (D. Mass. 2015)

(citing <u>Three Sons, Inc. v. Phoenix Ins. Co.</u>, 257 N.E.2d 774, 777 (Mass. 1970) ("A reservation of rights in such circumstances notifies the insured that the insurer's defence [sic] is subject to the later right to disclaim liability. The insured thus can take the necessary steps to protect his rights, and has no basis for claiming an estoppel.")). Moreover, it is "standard and prudent practice in the insurance industry" for an insurer to provide a defense subject to a reservation of rights. <u>Id.</u> at 374. Here, VFIC clearly stated that its defense was subject to a reservation of rights. VFIC is free to dispute its duty to defend before this Court. <u>See</u> <u>Narragansett Bay Ins. Co.</u>, 146 F. Supp. 3d at 372-73.

## V.   **Defending Subject to Reservation of Rights**

Lionbridge forges ahead, arguing that even if VFIC has no duty to defend, VFIC must pay all reasonable costs of defense accrued during the period for which it agreed to defend Lionbridge subject to a reservation of rights.[5] Neither party has cited a case directly on point. <u>See</u> <u>Deutsche Bank Nat'l Ass'n v. First American Title Ins. Co.</u>, 991 N.E.2d 638 (Mass. 2013); <u>Polaroid Corp. v. Travelers Indem. Co.</u>, 610 N.E.2d 912 (Mass. 1993); <u>Holyoke Mut. Ins. Co. v. Vibram USA, Inc.</u>, No. SUCV20152321BLS1, 2017 WL 1336600 (Mass. Sup. Ct. March 21, 2017) (not reported), <u>rev'd</u> 106 N.E.3d

---

[5] Lionbridge raised this issue for the first time at the motion hearing. The Court requested supplemental briefing on this issue from both parties.

572 (Mass. 2018). It is also unclear under Massachusetts law whether an insurer can recoup defense costs paid while defending subject to a reservation of rights. See Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 849 n.21 (Mass. 2013) ("We have not addressed whether an insurer may seek reimbursement for the costs of a defense undertaken pursuant to a unilateral reservation of rights."); Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 106 N.E.3d 572, 574 n.4 (Mass. 2018) ("[W]e need not reach the issues raised by the parties related to recoupment of monies paid for defending Vibram under a reservation of rights."). VFIC has agreed not to seek recoupment, and the Court denies Lionbridge's request for additional attorney's fees in light of the Court's ruling that there was no duty to defend to begin with.

### ORDER

For the reasons stated above, the Court **ALLOWS** VFIC's motion for summary judgment (Dkt. 104), **DENIES** Lionbridge's motion for partial summary judgment (Dkt. 76), and dismisses all of Lionbridge's claims.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge